**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,             )<br>                                                              )<br>                          Plaintiff,        )<br>                                                              )<br>vs.                                                        )<br>                                                              )<br>SHANNON KANE,                               )<br>                                                              )<br>                          Defendant.     )<br>_____ ) | Case No. 2:12-cr-00162-GMN-PAL<br><br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Mtn to Suppress - Dkt. #21) |

The court held an evidentiary hearing October 2, 2012, on Defendant Shannon Kane's Motion to Suppress for Fourth and Fifth Amendment Violations (Dkt. #20).  Nisha Brooks-Whittington appeared on behalf of Mr. Kane, and Cristina Silva appeared on behalf of the government.  Las Vegas Metropolitan Police Department ("LVMPD") Officers Chirco and Thai appeared and testified at the hearing. The court has considered the Motion, the government's Response in Opposition (Dkt. #21), Kane's Reply (Dkt. #24) and the testimony and evidence adduced at the evidentiary hearing.

**BACKGROUND**

On May 9, 2012, the grand jury returned an Indictment (Dkt. #1) against Kane, charging him with one count of Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  The Indictment alleges that on August 14, 2011, Kane knowingly possessed a Taurus Model PT111Pro 9mm caliber semi-automatic handgun bearing serial number TAM07135 after having been convicted of battery with substantial bodily harm in 2004 and of robbery and second degree kidnaping in 2005 in the State of Nevada.

/ / /

/ / /

/ / /

# DISCUSSION

## I. The Parties' Positions.

### A. Kane's Motion to Suppress.

Kane contends that his Fourth Amendment rights were violated when Las Vegas Metropolitan Police Department ("LVMPD") conducted an illegal search and seizure. Specifically, Kane argues that Officer Chirco conducted a *Terry* stop without reasonable suspicion. At the time of the stop, Kane was not engaged in unlawful conduct and did not have a weapon in his hand; he was simply walking toward a vehicle. There was no reasonable suspicion to believe that Kane was engaged in criminal activity or that he was armed. Alternatively, Kane contends that even if LVMPD officers had reasonable suspicion to stop him based on the 911 call, the police violated Kane's rights by immediately handcuffing Kane and searching his person. Kane contends this goes beyond the sort of detention permitted by *Terry* and its progeny, which only permits police to briefly detain a suspect for investigatory purposes and to conduct a pat down for officer safety. Kane contends Officer Chirco ordered him to stop at gunpoint, immediately placed him in handcuffs, and searched Kane's pockets, where he found a bag containing methamphetamine and a pistol magazine. Kane asserts it was not possible to know the object in his pocket was a pistol magazine by feel alone because of its similarity to other objects, like a flashlight. Additionally, Kane asserts it was not immediately apparent that the object in his other pocket was methamphetamine. Accordingly, Officer Chirco violated Kane's Fourth Amendment rights, and the pistol magazine and methamphetamine should be suppressed.

Kane also asserts that his Fifth Amendment rights were violated because he was subject to interrogation by Officer Chirco, while in custody, without receiving *Miranda* warnings. Kane contends that he was in custody for *Miranda* purposes once placed in handcuffs. Officer Chirco then questioned Kane about why Kane was at the residence and what had occurred. Kane's statements were made in response to Officer Chirco's interrogation, and Officer Chirco should have known that any questions were likely to elicit inculpatory statements because Kane's responses would connect him to a vehicle that police believed contained evidence of a crime. Officer Chirco's interrogation of Kane before informing Kane of his *Miranda* rights is a violation of Kane's Fifth Amendment rights, and Kane's statements should be suppressed.

1    Finally, Kane contends that but for the illegal search that uncovered a pistol magazine and
2 methamphetamine, Officer Chirco did not have probable cause to arrest him. Therefore, the
3 subsequently recovered semi-automatic handgun, nylon gun holster, gun magazine with ammunition,
4 and any statements Kane made about the handgun are fruits of the poisonous tree and should also be
5 suppressed.

6    **B.    The Government's Response.**

7    The government responds that Officer Chirco had reasonable suspicion to conduct a *Terry* stop
8 and pat down of Kane based upon the nature and information known to police–namely, a report that a
9 physical altercation between a man and woman occurred, and the man was reportedly armed with a club
10 or pipe. Given the nature of call to which police responded, it was reasonable and prudent to conduct a
11 pat down of Kane for officer safety. Although the pat down was intended to check for weapons, Officer
12 Chirco was permitted to seize any object that was immediately recognizable as contraband, including
13 the methamphetamine from Kane's pocket. Because Officer Chirco had reasonable suspicion to
14 conduct an investigatory detention, and because he reasonably feared Kane was armed, the stop and pat
15 down did not violate Kane's Fourth Amendment rights.

16    The government also asserts that Kane's Fifth Amendment rights were never implicated during
17 his contact with Officer Chirco because Kane was not interrogated. Rather, Officer Chirco only asked
18 Kane questions to establish Kane's identity and the reason for his presence at the location of the
19 stop–both questions routinely used for investigatory purposes and not intended to elicit incriminating
20 statements. The government contends Kane was not subjected to custodial interrogation and was
21 therefore not entitled to *Miranda* warnings. Kane's statements regarding the gun's location were
22 spontaneous and not elicited through interrogation. Thus, they were not protected by the Fifth
23 Amendment, and no constitutional violation occurred.

24    **C.    Kane's Reply.**

25    Kane reiterates that Officer Chirco should have investigated the 911 caller's report rather than
26 seize Kane and search his person. Kane was not holding a weapon in his hand, and he was not engaged
27 in any crime when Officer Chirco stopped him. With respect to the pat down, Officer Chirco's arrest
28 report does not indicate that he observed a bulge in Kane's pants pockets consistent with a pipe or club,

but he conducted a pat down anyway.  Additionally, there is nothing in Officer Chirco's report to suggest he immediately recognized the bag in Kane's pants pockets as methamphetamine.  Instead, Officer Chirco conducted an illegal search of Kane's person that exceeded the bounds of a lawful *Terry* stop.

Kane also asserts that Detective Thai's arrest report is clear that Kane was in custody prior to being *Mirandized*.  Moreover, there is nothing in Officer Chirco's report to support the government's contention that Kane made voluntary statements about why he was at the scene, or whether he was involved in a domestic disturbance.  However, Kane notes that with regard to Kane's statement about Keith (the driver of the truck at the scene), Officer Chirco's report indicates the statement was voluntary and post-*Miranda*.  Thus, Kane's initial statements must have been in response to Officer Chirco's interrogation.  Because Kane was not advised of his rights before a custodial interrogation, his Fifth Amendment rights were violated, and his statements must be suppressed.

## II.    **Evidence Before the Court.**

Officer Michael Chirco and Truong Thai were called as witnesses on behalf of the Government.  The court admitted the Government's proposed Exhibits 1 - 5, photographs of the pickup truck and contents found at the scene at the time of the defendant's arrest.  The court also admitted the defendant's proposed Exhibits A, B, and D, Officer Chirco's declaration of arrest, arrest report and CAD [computer assisted dispatch] printout of the incident.  Defendant did not move for the admission of proposed Exhibit C, Detective Thai's application for telephonic search warrant.

## DISCUSSION

## I.    **Fourth Amendment Claims.**

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Fourth Amendment protects reasonable and legitimate expectations of privacy.  *Katz v. United States*, 389 U.S. 347 (1967).  The Fourth Amendment protects "people, not places."  *Id*.  Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be suppressed as the "fruit of the poisonous tree."  *Wong Sun v. United States*, 371 U.S. 471 (1963).

///

### A.     Was Kane Seized for Fourth Amendment Purposes?

In determining whether a Fourth Amendment violation has occurred, and, if so, whether suppression is warranted, the court begins its analysis with the question of whether the initial encounter between Kane and Officer Chirco was a seizure. As a general rule, a person is seized for Fourth Amendment purposes when a law enforcement officer restricts the liberty of the person, either by physical force or show of authority. *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *Terry*, 392 U.S. at 19, n. 16 (a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen"). A citizen's liberty is restrained if, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" *Bostick,* 501 U.S. at 437 (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (a person has been seized within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave). In 2002, the Supreme Court reaffirmed its holdings in *Bostick and Hodari D.* and held that the court must consider the totality of all the circumstances surrounding the encounter to determine whether a person is seized under the Fourth Amendment. The reasonable person test is an objective one and "presupposes an *innocent* person." *United States v. Drayton,* 536 U.S. 194, 202 (2002) (quoting *Bostick*, 501 U.S. at 437-38 (emphasis in original)).

The court determines whether the contact was a "*Bostick* encounter" or a "*Terry* stop" on a case-by-case basis considering the totality of the circumstances. In *Terry v. Ohio,* the Supreme Court determined that an investigatory detention is a brief seizure by police based on reasonable suspicion of criminal activity and is a narrowly drawn exception to the probable cause requirement of the Fourth Amendment. *See generally* 392 U.S. 1, 26 (1968). There, the Supreme Court held that police may stop a individual reasonably suspected of criminal activity, question him briefly, and perform a limited pat-down frisk for weapons. *Id*. at 22-24. The Court emphasized the importance of balancing "the need to search (or seize) against the invasion which the search (or seizure) entails. *Id*. at 21 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 534 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)). Under this balancing approach, important government interests–namely, ensuring the

1  safety of officers and others nearby–can justify a brief investigatory detention on less than probable
2  cause. *Terry*, 392 U.S. at 21.
3        In this case, it is undisputed that Kane was seized in an investigatory detention. Officer Chirco
4  responded to a family disturbance call at 8017 Cimarron Ridge Drive in Las Vegas, Nevada, on August
5  14, 2011. A 911 caller informed the dispatcher, who informed Officer Chirco, that a Hispanic male
6  adult wearing an orange jersey with the number 22 on it was observed shoving a female. During the
7  encounter with the female the male was reported to have produced a pole, club or pipe-type weapon.
8  Officer Chirco testified he responded to the call and arrived at the intersection of Lepus Drive and
9  Cimarron Ridge Drive where he observed a white pickup truck parked on the west side of Lepus Drive.
10 He also observed a male wearing an orange jersey with the number 22 on it walking towards his patrol
11 car which was positioned parallel to the pick up truck. Officer Chirco drew his firearm because of the
12 report of a violent encounter with a female and the report that the male had a weapon. He regarded a
13 club as a potentially deadly weapon. He gave the male verbal commands to keep his hands out of his
14 pocket and approach the patrol car. The male complied. Officer Chirco secured the man's hands
15 behind his back with his own hand and conducted a pat down for officer safety in front of the patrol car
16 because he was concerned about the report of the violent incident and weapon. The subject was
17 compliant. Officer Chirco patted down the exterior of the male's left front pant pocket and felt what he
18 immediately recognized, from his training and experience, as a magazine of a pistol. After recognizing
19 the pistol magazine he placed the male, identified in open court as the defendant, Shannon Kane, in
20 handcuffs for officer safety. He described the pistol magazine as a long rectangular object with a lip or
21 curvature consistent with the grip of a magazine. He removed the magazine from the defendant's
22 pocket and placed the defendant in handcuffs because, in his training and experience, the presence of a
23 magazine and ammunition indicate a firearm is probably nearby.
24       After placing the defendant in handcuffs he continued his pat down of the defendant's exterior
25 clothing and felt a baggie in the defendant's front rear pocket which he immediately recognized as a
26 plastic bag with contents consistent with drugs. He removed the baggie and observed the contents
27 which appeared to be methamphetamine.
28       After conducting the pat down he identified the defendant who provided his name and Nevada

identification card. Chirco conducted a records check using the LVMPD Scope System which revealed that Kane had a number of felony convictions. Officer Chirco placed Kane in the back of the patrol car and read Kane *Miranda* warnings from a standard department issued card and initiated the arrest paperwork. A second officer arrived at the scene while Officer Chirco was conducting a pat down of the defendant. The second officer made contact with the person in the driver's side of the white pickup truck at the scene. Officer Chirco learned from the second officer who made contact with the driver, Keith Smith, that the driver met Kane and drove him to the scene in his pickup truck. Chirco advised Kane that he was under arrest for possession of methamphetamine and that he would be booked into the Clark County Detention Center.

Chirco also called a Sergeant in the firearms detail with LVMPD because of the magazine and ammunition he located on defendant's person, and the information he had that the defendant was an ex-felon who was prohibited from possessing a firearm or ammunition. Detective Thai from the firearms detail responded to the scene and took over the firearms investigation. Detective Thai applied for a telephonic search warrant from a state court judge. Kane remained in the prisoner compartment of Officer Chirco's patrol vehicle while Detective Thai conducted his investigation and applied for this telephonic search warrant. Officer Chirco did not ask the defendant any additional questions other than biographical information. However, Officer Chirco testified that Kane stated he would tell Chirco where the gun was if Chirco let the driver of the vehicle go. This statement was made spontaneously, and not in response to any questioning by Officer Chirco. Officer Chirco told Kane that he could not promise Kane anything. Kane responded that the firearm was in the center console of the vehicle. Officer Chirco testified that Kane's statement was not in response to any question he asked.

The court finds that the initial contact between Kane and Officer Chirco was not a consensual encounter as Kane was clearly not able to ignore the police presence and go about his business. Kane was seized in an investigatory detention, patted down and eventually arrested for possession of a controlled substance, methamphetamine.

    **B.**    **Did Officer Chirco Have Reasonable Suspicion to Conduct a *Terry* Stop?**

Although probable cause is not required, a law enforcement officer must have reasonable suspicion to conduct an investigatory detention pursuant to *Terry*. *Id.* at 21-22, 29. The Ninth Circuit

defines "reasonable suspicion" as "specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Rojas-Millan*, 234 F.3d 464, 468-69 (9th Cir. 2000) (quoting *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000)); *Terry*, 392 U.S. at 21. A police officer "is entitled to rely on his training and experience in drawing inferences from the facts he observes, but those inferences must also 'be grounded in objective facts and be capable of rational explanation.'" *Lopez-Soto*, 205 F.3d at 1105 (quoting *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)); *see also United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 751 (2002) (investigating officers are entitled to draw on their training and experience "to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person"). Additionally, the Supreme Court has held that observation of factors which are, by themselves, consistent with innocence may collectively amount to reasonable suspicion. *Id*. at 750-51, 753 (stating "a determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct").

  A case-by-case analysis is required to determine whether reasonable suspicion existed, and the courts look to the "totality of the circumstances" which surrounded the encounter. *Arvizu,* 122 S.Ct. at 750 (courts must look at the totality of the circumstances of each case to see whether a detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing). Inarticluable hunches or generalized suspicions are insufficient. *Ybarra v. Illinois*, 444 U.S. 85, 92-93 (1979). Reasonable suspicion to conduct an investigatory detention may be provided by a tip of an informant if that tip contains sufficient indicia of reliability. *Adams v. Williams*, 407 U.S. 143, 147 (1972) (finding known informant's tip carried enough indicia of reliability to provide reasonable suspicion to conduct *Terry* stop). Furthermore, in *United States v. Terry-Crespo*, the Ninth Circuit found that a 911 caller's tip "was not anonymous and therefore was entitled to greater reliability." 356 F.3d 1170, 1174 (9th Cir. 2004) (citing *United States v. Fernandez-Castillo,* 324 F.3d 1114, 1118 (9th Cir. 2003) (tip from Montana Department of Transportation more reliable than anonymous tip and could support finding of reasonable suspicion)). The court noted that the 911 caller gave his name, and the emergency nature of a 911 call–that is, because they generally occur contemporaneously with reported events–rendered the

information more reliable. *Id.* at 1196. Additionally, the court found the 911 tip reliable because a caller risks legal sanctions for making a false report. *Id.* (noting that calling 911 and having recorded telephone conversation risks possibility police could trace call or identify the caller by his or her voice). The Fourth Amendment does not require the police to verify the caller's identity before responding to the situation when the caller reports an emergency. *Id.*

Here, Officer Chirco had ample reasonable suspicion to conduct a *Terry* stop or investigatory detention. He responded to a 911 call of a family disturbance involving shoving. The male was reported to have a weapon, either a club or a pipe in his possession. The male was described as a Hispanic male adult wearing an orange jersey with the number 22 on it. When Officer Chirco arrived at the scene a short time after receiving the dispatch he observed a male walking towards a pickup truck parked at the intersection of Lepus and Cimarron Ridge Drive. The male was wearing an orange jersey with the number 22 on it.

### C.    Did Officer Chirco's Pat Down Exceed a *Terry* Frisk?

Pursuant to *Terry*, a police officer who makes an investigatory detention may conduct a limited pat-down frisk of a suspect. 392 U.S. at 27. The search may only be conducted if the officer reasonably believes the detainee poses a threat to the officer's safety or the safety of others. *Id.* It must be limited to a search for weapons and may not be used to search for evidence of criminal activity. *Id.* at 28. The Ninth Circuit has "identified a wide variety of factors that can support a reasonable belief that an individual is armed." *United States v. Flatter*, 456 F.3d 1154, 1157 (9th Cir. 2006). Significant weight is given to an officer's observation of a visible bulge in an individual's clothing that could indicate the presence of a weapon. *Id.* Sudden movements, or repeated attempts to reach for an object that is not immediately visible may give rise to a reasonable suspicion a defendant is armed. *Id.* at 1158. The nature of the crime suspected, and whether it is associated with weapons may create reasonable suspicion for a pat down search. *Id.* However, to comport with the Fourth Amendment, a police officer must have more than a reasonable belief that *if* the individual with whom contact is made is armed, he or she would be dangerous. *Id.*

If the protective search exceeds what is necessary to determine whether the suspect is armed, it is no longer valid under *Terry*, and its fruits must be suppressed. *United States v. Thomas*, 211 F.3d

1186, 1192 (9th Cir. 2000) (citing *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963); *Minnesota v. Dickerson,* 508 U.S. 366, 373 (1993) (citing *Sibron v. New York,* 392 U.S. 40, 65-66 (1968)). However, if a police officer lawfully pats down a suspect's outer clothing and feels an object whose identity as contraband is immediately apparent by feel, the officer may seize the contraband–whether threatening or not–without a warrant. *Dickerson,* 508 U.S. at 375-76 .

      Here, the court finds that Officer Chirco had reasonable suspicion to conduct a *Terry* frisk given the nature of the call, a family domestic disturbance call with a male in possession of a club or pipe that could be used as a deadly weapon. The nature of the crime reported was associated with a weapon. Although Officer Chirco did not observe the defendant carrying a club or pipe, the court found his testimony credible that based on his training and experience a club or pipe may be concealed in the subject's clothing. The court also found Officer Chirco's testimony credible that while he was conducting a pat down of Kane's exterior clothing he felt the outline of a pistol magazine, which he immediately recognized, based on his training experience as a magazine. The officer described the object he felt as a rectangular object with a curvature consistent with a pistol magazine. Based on the nature of the call, the report of the weapon, and the feel of the magazine, the officer reasonably retrieved the magazine. "Police officers are entitled to employ reasonable methods to protect themselves and others in potentially dangerous situations." *United States v. Willis,* 431 F.3d 709, 717, quoting *Allen v. City of Los Angeles*, 66 F.3d 1052, 1056-57 (9th Cir. 1995). The court finds that placing Kane in handcuffs after feeling and removing the pistol magazine was objectively reasonable under the Fourth Amendment. As Officer Chirco testified, it is a reasonable inference that one in possession of a magazine and ammunition has a gun nearby.

      After retrieving the magazine and placing Kane in handcuffs, the officer continued his pat down of Kane's exterior clothing. During the pat down Officer Chirco felt a plastic bag with an item inside consistent, based on his training and experience, with narcotics. The court found Officer Chirco credible that he immediately recognized the item in Kane's front rear pocket as a plastic bag containing narcotics. He therefore had reasonable suspicion to remove the item from the defendant's pocket. Upon observing the contents of the plastic bag the officer had probable cause to believe it was methamphetamine. Officer Chirco placed Kane under arrest for possession of methamphetamine and

conducted a records search which revealed that Kane had felony convictions. After learning Kane had felony convictions, he had probable cause to believe that Kane was prohibited from possessing ammunition or a firearm and contacted the LVMPD Firearms Detail to send an officer to conduct a firearms investigation. In short, the court concludes that Kane's Fourth Amendment rights were not violated by the investigatory detention, pat down, handcuffing or arrest.

## II. Fifth Amendment Claims.

The Fifth Amendment protects a person against self-incrimination. U.S. Const. Amend. V. Self incrimination includes "disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Hiibel v. Sixth Judicial Dist. of Nevada,* 542 U.S. 177, 191 (2004). In *Miranda v. Arizona,* the Supreme Court adopted the requirement of warnings as a prophylactic measure to guarantee a suspect is advised of his Fifth Amendment rights prior to custodial interrogation. *Thompson v. Keohane*, 516 U.S. 99, 102 (1995); *United States v. Basher,* 629 F.3d 1161, 1166 (9th Cir. 2011) (citing *Miranda v. Arizona,* 384 U.S. 436, 444-45 (1966)). Custodial interrogation is questioning or its functional equivalent initiated by law enforcement officers after a person has been taken into custody or deprived of his freedom. *Rhode Island v. Innis,* 446 U.S. 291, 301-02 (1980); *United States v. Butler*, 249 F.3d 1094, 1098 (9th Cir. 2001) (*citing Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). In determining whether a suspect was in custody, the inquiry is whether a formal arrest occurred, or other circumstances existed such that a reasonable person would have felt he could not terminate the interrogation and leave. *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)); *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008) (citing *Thompson*, 516 U.S. at 112).

In this case, it is clear that Kane was placed under arrest after the officer felt and removed the baggie containing what he suspected was methamphetamine. *Miranda* warnings were therefore required if Officer Chirco conducted a custodial interrogation.

The Supreme Court has held that for purposes of the requirement to give *Miranda* warnings, an interrogation occurs when a person is subjected to express questioning or its functional equivalent. *Innis,* 446 U.S. at 301-02. Interrogation includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to

elicit an incriminating response from the suspect." *Id.* The Ninth Circuit has observed "[t]he standard for determining whether an officer's comments or actions constitute "the 'functional equivalent' of interrogation is quite high." *Foster*, 227 F.3d at 1103 (citing *Innis*, 446 U.S. at 301-02).

Courts have repeatedly emphasized that many types of questions are not considered interrogation and do not require *Miranda* warnings. For example, questions asked of a motorist temporarily detained in a traffic stop do not require *Miranda* warnings. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)). Similarly, "routine booking" questions reasonably related to police record keeping concerns do not require *Miranda* warnings because they are not designed to elicit incriminating responses. *Pennsylvania. v. Muniz*, 496 U.S. 582, 600-02 (1990) (plurality opinion). Asking a suspect questions regarding general biographical information is not interrogation. *United States v. Foster*, 227 F.3d 1096, 1103 (9th Cir. 2000). General on-the-scene questioning does not constitute interrogation for purpose of the Fifth Amendment and thus does not require *Miranda* warnings. *See, e.g., Vickers v. Stewart*, 144 F.3d 613, 616-17 (9th Cir. 1998) (finding no interrogation when prison guard pulled defendant from emergency scene of fire and asked what happened).

Applying these cases to the case at bar, the court finds that Kane was not subjected to custodial interrogation before *Miranda* warnings were administered. The uncontroverted testimony of Officer Chirco was that he only asked Kane questions to obtain biographical information, determine Kane's identity, and perform a records check. After Kane was arrested he was placed in the back of Officer Chirco's patrol car and read *Miranda* warnings from a card Officer Chirco kept on his person. Kane stated he wanted an attorney, and Officer Chirco testified he did not ask any questions of Kane about the firearm or methamphetamine. Rather, he asked a limited number of questions to determine Kane's identity and ran a records check.

Officer Chirco testified that after Detective Thai arrived to conduct his firearms investigation Kane volunteered that the would tell Chirco where the gun was if Chirco let Smith go. The court found Officer Chirco's testimony credible. Kane's volunteered statement was spontaneous and not in response to any custodial interrogation conducted by Officer Chirco or any other officer. The court finds that Kane was not interrogated after invoking his right to counsel and initiated the statement that

he would tell Officer Chirco where the gun was located if officers let Smith go. The court also finds that Officer Chirco did not make any promise that induced Kane to speak.

Finally, Kane does not claim that his statements to Officer Chirco were coerced or involuntary. The court finds that the Government has met its burden of establishing that Kane's statements to Officer Chirco were voluntary by a preponderance of the evidence. *See Colorado v. Connelly,* 479 U.S. 157, 167 (1986). A voluntary statement is "one that is the product of a rational intellect and free will." *United States v. Kelley,* 953 F.2d 562, 564 (9th Cir. 1992), citing *Blackburn v. Alabama*, 361 U.S. 199, 208 (1960). The court finds that Kane received *Miranda* warnings after being arrested for possession of methamphetamine. Kane invoked his right to an attorney and was not questioned after invoking. Rather, he spontaneously volunteered a statement that he would tell Officer Chirco where the gun was if Chirco would let Keith Smith go.

For all of the foregoing reasons,

**IT IS RECOMMENDED** that Defendant Shannon Kane's Motion to Suppress (Dkt. #21) be **DENIED**.

Dated this 22nd day of October, 2012.

                                                  PEGGY A. LEEN
                                                  UNITED STATES MAGISTRATE JUDGE